UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL NO. 17-cr-10390-WGY |
| ) | |
| SANTIAGO PENA, ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Santiago Pena hereby submits this memorandum in advance of the sentencing hearing scheduled for Thursday, September 6, 2018, at 2:00 p.m.

At sentencing, the defendant will propose that a below guideline sentence is appropriate and reasonable, for the reasons which follow.

Introduction

Mr. Pena, 50, a native of the Dominican Republic and Legal Permanent Resident in the US, was a full-time used car salesman at the time of the offense. Mr. Pena worked at a dealership in Dorchester, and has admitted to brokering and middling drug transactions between others in exchange for what he says were relatively small cash payments.

Mr. Pena was not someone given over to criminality. After working as a prep cook for 10 years, he owned and operated a used car concern, Express Motors on Massachusetts Avenue in Dorchester, for five years, from 2011 to 2016. PSR ¶ 156. The business did not thrive, and in 2016, after financial reversals, he was forced to close it down. Id. At the time of the offense, he was working at another used car lot in Dorchester, Classical Motors, as an employee, where he

was described as a "hard worker, intelligent [and] friendly … and [a] very good ...salesperson." PSR ¶ 155.  He was married, to Violeta Del Rosario, and helping to raise her teenaged son from a previous marriage.  PSR ¶¶ 141-142.

Mr. Pena was charged in the indictment with a quantity of fentanyl pills which triggered the statutory five-year mandatory minimum sentence under §841(b)(1)(B).  However, the parties and Probation agree that Mr. Pena qualifies for the safety valve.  USSG §5C1.2; 18 U.S.C. §3553(f)(1)-(5).  He is therefore exposed to a guideline sentencing range of **30 to 37 months**. (OL 19, CHC I).  PSR ¶ 163.

At sentencing, Mr. Pena will respectfully request the Court consider imposing a sentence of **18 months** on him after considering his personal story and his role in the offense, in light of the statutory purposes of sentencing[1].

The Sentencing Factors

Nature and Circumstances of the Offense

As noted above, Mr. Pena was a "middle man" (the description is the government's) in several fentanyl transactions in the summer of 2017.  An investigation into narcotics trafficking on Cape Cod brought investigators to Dorchester, where they uncovered evidence that Mr. Pena "middled" several transactions among co-conspirators James Ramirez (charged separately in

---

[1] This guideline range is based on Probation's estimate that the quantity attributable to Mr. Pena is between 40 and 160 grams of fentanyl. At the plea hearing, the government stated it expected the quantity for which Mr. Pena would be found responsible to be as high as 1000 grams, which corresponds to a guideline OL of 30 and a sentencing range of 97-121 months in CHC I.  The government stated at the plea hearing on March 19, 2018, however, that in the event the quantity were determined to be in that range, it would likely advocate that application of the "minor role" adjustment was appropriate, based on its assessment of Mr. Pena's role in the offense.  "Change of Plea," 3/19/2018, 10, 15-16.

17-cr-10328-WGY), brothers Alex and Kevin Fraga (charged, respectively, in 17-cr-10320-NMG and 17-cr-10321-ADB), and an unindicted co-conspirator named "Joel."

Probation has determined that Mr. Pena is responsible for between 40 and 160 grams of fentanyl. PSR ¶ 105. Neither party has objected to this calculation.

History and Characteristics of the Defendant.

Mr. Pena, 50, was born in the Dominican Republic. His parents divorced when he was still a child. He was raised by a paternal aunt, along with his three siblings. (He also has five maternal half-siblings). PSR ¶ 126. Mr. Pena emigrated legally to the United States in 1993, at the age of 25. He lived and worked in New York City. PSR ¶ 105. Records reflect he was convicted of Attempted Criminal Sale of a Controlled Substance in the Third Degree in New York City under a different name, at the age of 32, jailed for six to nine months, and subsequently deported. PSR ¶¶ 118, 139.

Mr. Pena was previously married but the marriage did not produce children. PSR ¶ 144. He did have two biological children with paramour Flor Del Jorge: Annie Carolina Pena, 23, and Aneldi Pena, 16. They live in the Dominican Republic. PSR ¶¶145-148. Mr. Pena has supported them by sending remittances. PSR ¶148.

Mr. Pena has resided in Boston since approximately 2000. He worked as a prep cook at a Boston restaurant for approximately 10 years, until he was laid off. He was subsequently "gifted" a used car business, Express Motors, on Massachusetts Avenue in Dorchester. However, he was unable to make this business profitable and wound it down in 2016. At the

time of the offense, he was selling cars at a different dealership, now as an employee.  PSR ¶¶ 155-156.

Mr. Pena has been involved in a relationship with Violeta Del Rosario since 2008.  They married in 2014.  Ms. Del Rosario, whose letter in support of Mr. Santiago is appended to this letter, writes feelingly of how he came to be a father to her teenaged son from another relationship, Engel, now 18, noting they "love and respect each other as if they were [biologically related.]."  Exh. A.  Ms. Del Rosario writes of her husband that "he is a charitable person, respectful, friendly  … like a light for the whole family," and that without him "[t]he house is without light."  She notes his reputation among friends as a "caring" and "loving" person, and believe he feels great "remorse."  Id.

Mr. Pena purchased a multi-family home in Dorchester in 2009.  However, the property is not habitable due to a fire and is the subject of a lien.  The mortgage debt reflected in the PSR relates to this property.  PSR ¶ 38.

## Collateral Consequences

Mr. Pena faces a substantial risk of deportation after he serves his prison sentence.  For Mr. Pena, this so-called collateral consequence of his conviction is at least as serious and painful as any prison sentence the Court will impose.

Mr. Pena provided for a spouse and a teenaged stepchild in the US with his legitimate income; he provided in part for two children in the Dominican Republic, by sending them remittances.  He will be hard pressed to continue to provide for them in the near certain event he is deported, as he will find himself in a country where he has not lived for any substantial length of time for twenty-five years.  He will be unable to resume what for him, for many years, is

normal life. The consequences of his actions, therefore, are more severe for him than they would be for a similarly situated individual who was a US citizen.

Counsel submits the Court may and should take this painful consequence into consideration when fashioning the overall sentence. *See United States v. Thavaraja*, 740 F.3d 253, 262–63 (2d Cir. 2014) ("In determining what sentence is 'sufficient, but not greater than necessary,' to serve the needs of justice ... a district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family."); *United States v. Stewart*, 590 F.3d 93, 141-142 (2d Cir. 2009) ("It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence.") (*cited in United States v. Nesbeth*, 188 F.Supp.3d 179, 187 (E.D.N.Y. 2016).) *But see United States v. Morgan*, 635 Fed.Appx. 423, 445-446 (10 Cir. 2015) (holding district court's focus on collateral consequences in fashioning a sentence "impermissible.")

<u>Conclusion</u>

WHEREFORE the Defendant respectfully requests the Court impose an 18 month sentence on Mr. Pena.

>
> Respectfully submitted,
> SANTIAGO PENA,
> By his attorney,
>
> */s/Ian Gold*
> Ian Gold (BBO# 665948)
> Law Office of Ian Gold
> 2 Mill & Main Place, Ste. 260 EF
> Maynard, MA 01754
> (617) 297-7686 (phone)
> ian.gold@iangoldlaw.com

Date:  September 4, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that true copies of this document will be served on the registered parties through the ECF system on this date, Sept. 4, 2018.

>  /s/Ian Gold
>  Ian Gold